EL PUEBLO, DEMANDANTE Y APELADO, Y WAYS,
ACUSADO Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de Ponce en causa por alteración de la paz pública.

No. 1659.—Resuelto en abril 15, 1921.

ALTERACIÓN DE LA PAZ—CONDUCTA TUMULTUOSA U OFENSIVA—VITUPERIO.—La paz de un vecindario o individuo puede ser alterada por medio de conducta tumultuosa o de conducta ofensiva, resolviéndose en este caso concreto que constituye conducta ofensiva el decir una persona a otra pública, maliciosa y voluntariamente en alta voz ''lambe ojo de los Sres. Bonar,'' ''fariseo'' y ''judas,'' dando lugar con ello a que se reunieran muchas personas. Dichas imputaciones pueden calificarse también como vituperio de acuerdo con el artículo 368 del Código Penal. El caso se distingue del de *El Pueblo* v. *Ruiz,* resuelto en enero 31, 1921, (pág. 74).

ID.—DENUNCIA SUFICIENTE—IMPUTACIÓN DEL DELITO BAJO FORMAS DISTINTAS—DUPLICIDAD.—Cuando en una denuncia por alteración de la paz se imputan en un solo cargo varios actos cometidos al mismo tiempo y como parte de la misma transacción, no existe duplicidad. En este caso concreto se resolvió que la circunstancia de consignarse en la denuncia que las palabras pronunciadas lo fueron al alcance del oído de mujeres y niños, hecho que por sí solo cuando concurren los requisitos que la ley exige puede constituir un delito de alteración de la paz, no vicia de nulidad la denuncia.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. L. Tormes.*

Abogado del apelado: *Sr. José E. Figueras, Fiscal.*

EL JUEZ ASOCIADO SR. DEL TORO, emitió la opinión del tribunal.

Juan B. Ways fué denunciado y condenado como autor de un delito contra la paz pública a pagar dos dólares de multa y en defecto de pago a sufrir un día de cárcel por cada dólar dejado de satisfacer. No conforme con la sentencia apeló para ante este tribunal. No existe pliego de excepciones ni relación de pruebas. La única cuestión suscitada es la fundamental de que los hechos alegados en la denuncia no constituyen delito público.

La denuncia en lo pertinente, dice así:

''El acusado arriba mencionado Juan B. Ways, de una manera ilegal, maliciosa, criminal y voluntariamente, alteró la paz y tranqui-

lidad del denunciante, profiriéndole palabras insultantes y amenazadoras tales como que yo era un lambe ojo de los Sres. Bonar, un fariseo, un judas y otras tales por el estilo, dando lugar con esas frases a que se reunieran en dicha oficina donde pasó el hecho muchas personas, estas palabras fueron dichas en alta voz y al alcance de los oídos de mujeres y niños que visitan dichas oficinas.''

Y la ley aplicable es el artículo 368 del Código Penal que dice:

''Toda persona que maliciosa y voluntariamente perturbare la paz o tranquilidad de algún vecindario o individuo, con fuertes o inusitados gritos, conducta tumultuosa y ofensiva, o amenazas, vituperios, riñas, desafíos o provocaciones, o que en las calles de alguna ciudad o pueblo, o en las vías públicas disparare algún arma de fuego, o hiciere uso de lenguaje grosero, profano o indecoroso en presencia o al alcance del oído de mujeres o niños, en forma estrepitosa o inconveniente, incurrirá en *misdemeanor* y será castigada con multa máxima de doscientos dollars, o cárcel por un término máximo de noventa días o ambas penas, a discreción del tribunal.''

Como se ve comprende el precepto legal transcrito tres formas diferentes, pudiendo perpetrarse la primera de siete modos. Las frases iniciales ''toda persona que maliciosa y voluntariamente,'' son comunes a las tres formas.

La primera de éstas consiste en perturbar la paz o tranquilidad de algún vecindario o individuo con:

*a.* Fuertes o inusitados gritos;

*b.* Conducta tumultuosa y ofensiva (debiendo hacerse constar que en vez de la conjunción copulativa *y*, el original inglés contiene la disyuntiva *or*, de suerte que la verdadera traducción es: conducta tumultuosa u ofensiva);

*c.* Amenazas;

*d.* Vituperios;

*e.* Riñas;

*f.* Desafíos, o

*g.* Provocaciones.

La segunda forma consiste en perturbar la paz por medio

del disparo de algún arma de fuego en las calles de alguna ciudad o pueblo o en los caminos públicos.

Y la tercera en el uso de lenguaje grosero, profano o indecoroso en presencia o al alcance del oído de mujeres o niños, en forma estrepitosa e inconveniente.

El artículo 368 forma parte del título quince de nuestro Código Penal que trata de los "delitos contra la paz pública." Corpus Juris dedica las páginas 385 a 399 del tomo 9, bajo el epígrafe de "Breach of the Peace," a tratar de este delito.

La alteración de la paz, como expresamente dispone la ley, puede ser de algún vecindario o de un individuo. En el presente caso la denuncia dice que el acusado "alteró la paz y tranquilidad del denunciante." Se trata, pues, de la alteración de la paz de una persona. ¿Cómo? "Profiriéndole palabras insultantes y amenazadoras" en voz alta, así: que el denunciante era "un lambe ojo de los Sres. Bonar, un fariseo, un judas y otras tales por el estilo, dando lugar con esas frases a que se reunieran en dicha oficina donde pasó el hecho, muchas personas."

¿Está comprendido el caso en alguna de las formas del delito? A nuestro juicio lo está en la forma primera, letra *b,* o sea turbar la paz de un individuo maliciosa y voluntariamente por medio de una *conducta ofensiva.* La denuncia no sigue al pié de la letra las palabras del estatuto. No fué formulada por un fiscal, sino por el propio ciudadano ofendido. Pero alegándose como se alega en ella que el acusado maliciosa y voluntariamente alteró la paz del denunciante dirigiéndole las palabras que se expresan en la denuncia en alta voz, dando lugar con ello a que se reunieran muchas personas, se imputa claramente una *conducta ofensiva* pública, capaz de perturbar la paz de la persona contra quien iba dirigida.

Conducta, según el diccionario de la Academia, en una de sus varias acepciones, quiere decir "porte o manera con que los hombres gobiernan su vida o dirigen sus acciones.'"

Y "la conducta de una parte, en su sentido más amplio," se ha dicho en el caso de *Hallovell National Bank* v. *Morston,* 27 Atl. 529, 531, citado en 2 Words & Phrases Judicially Defined, 1416, "consiste de actos, palabras, silencio u omisión negativa de hacer alguna cosa."

No creemos que el legislador al usar la palabra *conducta* en el artículo 368 del Código Penal tuviera en mente una serie continuada de actos ejecutados con igual intención en repetidas ocasiones. El trató de prever y castigar un acto delictivo y es para nosotros claro que una persona que voluntaria y maliciosamente se dirige a otra en público y la insulta en la forma que lo hizo en este caso, usa para con ella una conducta ofensiva. Llamar "lambe ojo" a una persona significa por lo menos vulgarmente imputarle una actuación servil, el papel de adulador, llamarla "fariseo," quiere decir hipócrita, y "Judas," traidor, capaz de vender por dinero a su Maestro, de traicionar a su causa por más santa que ella fuere.

Y esta interpretación de la palabra conducta tal como se usa en el repetido artículo 368 adquiere más fuerza cuando se examina el significado del calificativo "ofensivo" que la acompaña.

"Offensive," en general, significa, 29 Cyc. 1353, cualquier cosa que causa disgusto, que produce dolor, u origina sensaciones desagradables.

Aplicada restrictivamente se resolvió en el caso de *State* v. *Sherrar,* 117 N. C. 716, 23 S. E. 157, que llamar a una persona "maldito salteador de caminos en un restaurant público en voz tan alta que pueda ser oída en la calle, es castigable bajo una ordenanza prohibiendo y castigando la conducta desordenada." El caso se cita en 14 Cyc. 469, en apoyo y explicación del texto que trata sobre *"ofensive language in or near dwelling."* Véase además 18 C. J. 1219.

Se ha usado la expresión lenguaje ofensivo como equivalente a lenguaje abusivo, insultante. En el caso de *Pco.* v.

*Sinclair,* 86 Misc. 426, 435, 149 N. Y. S. 54, al decidir la corte que la conducta del acusado fué desordenada, dijo que su conducta fué insultante y que el insulto consistía en parte en la materia de la censura y en parte en la publicidad con que fué infligida.   18 C. J. 1219.

En el caso de *State* v. *Sturges,* 48 Mo. A. 263, se resolvió que:

"Cuando una persona en voz alta acusa a un juez de paz que se halla en el desempeño de sus deberes oficiales, de establecer procesos contra dicha persona y lo apostrofa con epítetos viles, ello constituye una alteración de la paz."   9 C. J. 389.

Pero si existiera alguna duda con respecto a la calificación del delito dentro de la primera forma, letra *b,* estaría siempre comprendido dentro de la dicha primera forma, letra *d,* porque claramente constituyen *vituperios* las imputaciones públicas que el acusado hizo al denunciante en el sitio y en la forma en la denuncia expresados.

La palabra *"traducing"* del original inglés ha sido vertida por la palabra "vituperio" en el texto castellano.  *"Traduce,"* según el Century Dictionary & Cyclopedia, vol. VIII, página 6418, quiere decir: "Falsear, presentar o exponer a calumnia o ridículo; difamar; calumniar; vilipendiar." Y según el Webster's New International Dictionary, página 2181, significa: "Específicamente, exponer injustamente a desprecio o vergüenza; calumniar; vilipendiar; difamar; como difamar una reputación.—Tuvo la bajeza de calumniarme (*traduce*) en un libelo.—Dryden." Y "vituperio," según el Diccionario de la Academia, significa: "Baldón u oprobio que se dice a uno.  Acción o circunstancia que causa afrenta o deshonra," significando "vituperar," según el Diccionario Salvat, "decir mal de una persona o cosa, notándola de viciosa o indigna."

Se ha insinuado que por más que la ley castiga la alteración de la paz de un individuo, siempre, para que exista el delito, es necesario el elemento público.  Estamos confor-

mes.   Hemos visto que el artículo 368 forma parte del título
que comprende los delitos contra la paz pública.   La natu-
raleza de los diversos actos que abarca el indicado artículo
y el espíritu general del mismo, así lo demandan.   Pero tal
elemento existe en el presente caso.   La conducta del acu-
sado para con el denunciante fué en público y expresamente
se alega en la denuncia que la actuación del acusado dió lugar
a la reunión de muchas personas.   Esta circunstancia que
ahora consideramos diferencia este caso del de *El Pueblo* v.
*Ruíz,* decidido por esta Corte Suprema el 31 de enero del
año actual, 29 D. P. R. 74.   En él establecimos que el uso
de lenguaje insultante por sí solo no constituye una altera-
ción de la paz.   No podíamos calificar el lenguaje usado como
conducta ofensiva porque las circunstancias en que lo fué
tendían a mitigar más bien que a agravar la forma de las
palabras empleadas.   Ellas eran la mera expresión de una
persona que llamada por el denunciante se sintió por él agra-
viada y fueron dichas tranquilamente.   En el presente caso
las palabras no sólo eran insultantes, sino que fueron dichas
en tonos fuertes y atrajeron un número de personas.

Se ha indicado también que apareciendo al final de la
denuncia lo que sigue: "estas palabras fueron dichas al al-
cance de los oídos de mujeres y niños que visitan dichas ofi-
cinas," hay una confusión tal que no se sabe por qué se de-
nunció al acusado, esto es, si su delito consistió en haber
perturbado la paz del denunciante por medio de su conducta
abusiva, o si consistió en el uso de lenguaje grosero, profano,
o indecoroso en presencia o al alcance del oído de mujeres
y niños, en forma estrepitosa e inconveniente.

A nuestro juicio no existe duplicidad que vicie fatalmente
la denuncia.   Es predominante y clara la primera parte de
ella.   El hecho de que realmente se queja el denunciante es
el de la conducta del acusado para con él.   Si tal conducta
fué en público y además las palabras se virtieron al alcance
del oído de mujeres y niños, son circunstancias que dan re-

lieve al acto, pero no que se alegan como constitutivas de un separado delito.

Pero aunque se hubieran imputado varias formas de cometer el delito en un solo cargo, la denuncia sería suficiente dada la naturaleza del delito. "Cuando varios modos son nombrados," dice Corpus Juris, apoyándose en varias decisiones, "por medio de los cuales una alteración de la paz ha sido cometida, una acusación imputando en un cargo varios actos cometidos al mismo tiempo y como parte de la misma transacción no constituye duplicidad." 9 C. J. 390.

Uno de los casos citados es el de *State* v. *Matthew,* 42 Vt. 542, 545, en el que la corte dijo:

"La paz pública puede ser alterada o violada en una de estas formas; y puede ser alterada o violada en todas esas formas, y sin embargo constituir una sola ofensa. Un simple cargo en una acusación por el gran jurado, acusación fiscal o denuncia, puede contener una exposición de hechos que muestren de su faz que un delito, a saber, una alteración de la paz, ha sido cometido en todas las formas expresadas en el estatuto. Y cuando la conducta tumultuosa y ofensiva, amenazando, peleando, desafiando, acometiendo y pegando, son actos relacionados, cometidos a un mismo tiempo, ellos constituyen sólo una ofensa, y tales actos relacionados en su totalidad, o aquella parte de ellos necesaria para constituir el delito, debe ser alegada en un cargo. Es claro que por tales actos relacionados el apelado no podría ser convicto de dos o más delitos mediante la exposición, en dos o más cargos, de las diferentes formas en que cometió el delito, cuando los actos contenidos en todos y cada uno de los cargos fueron cometidos simultáneamente. El delito comprendido en esa sección del estatuto es un delito menos grave, ya sea cometido en una de las formas o en todas las formas expresadas en el estatuto; y una condena sobre una acusación alegando la comisión del delito en una o más de las formas expresadas, sería un impedimento a cualquier acusación subsiguiente por el mismo delito alegando su comisión en una o más de las otras formas expresadas en la sección del estatuto. Bajo un cargo en que se alega que el apelado alteró y violó la paz pública con conducta tumultuosa y ofensiva, y amenazando, peleando con, desafiando, acometiendo y pegando a otra persona cualquiera, la prueba de una alteración de la paz, en cualquiera de las formas ale-

gadas, sería suficiente para sostener el proceso, y las otras formas, cuya comisión al mismo tiempo haya sido alegada y probada, podrían ser tratadas como hechos o circunstancias agravantes.'' 9 C. J. 391 nota.

Véanse además los casos de *Stancliff* v. *United States,* 82 S. W. 882; *Delk* v. *Commonwealth,* 178 S. W. 1129, y *El Pueblo* v. *Collazo,* 20 D. P. R. 204.

Por virtud de todo lo expuesto opinamos que los hechos expresados en la denuncia constituyen el delito por el cual fué castigado el acusado y apelante y en tal virtud que debe declararse sin lugar el recurso y confirmarse la sentencia apelada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Aldrey y Hutchison.

El Juez Asociado Sr. Wolf disintió.